Mr. Hadley? May it please the court, good morning. This case requires the court to decide a fundamental dispute between the parties. What is the invention? We contend that the invention is a novel interface circuit, and that interface circuit maps requests from one bus to a second bus. And it also solves what was known in the art at the time as a cache coherency problem. And it solved that problem by using a conventional snoop signal process. Appellees, in contrast, argue that the invention is a new snoop signal that provides an intelligent snoop processing that was not known in the art at the time. What we're asking this court to do is to enter an order that does two things. First, to clarify what a snoop signal is, and second, what a snoop signal is not. As to what a snoop signal is, we're asking this court to make a ruling that a snoop signal is what it had always been in the art at the time of this invention. A signal that directs a processor— Does the snoop signal have to know if data is in the cache? No, Your Honor. The HREC here doesn't? Exactly, Your Honor. What we're asking this court to do is to enter an order that the snoop signal doesn't have to know that data is in cache, but simply that the device— To conclude from the specification and from the language of the claim, that it does need to know that the data is in the cache. Your Honor, the portions of the specification that the district court relied on, we think, actually teach something different. The first thing that the court placed most reliance on is the abstract, and we agree that the abstract does support the district court's construction, but it was a mistake. As the district court said twice, that neither the abstract nor anything else in the patent enables a smart snoop signal. The other language that the district court relied on in the specification was language that says that a snoop signal references a cache data storage location, but in that regard, the district court only focused on two words, cache data, and essentially read that as a verb, cached, modifying location, a noun, or data. What the court didn't do was read the entire phrase, which says that the snoop signal references a cache data storage location. I think the example we gave in our reply brief is dead on. In that phrase, references is the verb, and cache data storage location is a noun. It's a place. If I say that I have buried treasure, yes, there is treasure buried in a location, and that's the way the district court read cache data, but if I say X references a buried treasure storage location, then that X still references the location, whether data is there or not, and that's why a snoop signal is asserted whenever the device issuing that signal receives a request for an address that is within the range of addresses that can be put into cache memory, but it simply does not have the intelligence to know whether the data is actually there or not. The third thing that the district court relied on was the claim language itself that says that the snoop signal indicates a second data storage location or request from a second data storage, I'm sorry, a subset of the second data storage location. So the question is that the district court really never answered is what is a subset of the second data storage location? In our reply brief, we explain why we believe that the subset refers to the entire subset of main memory that can be put into cache memory as opposed to just a sub-subset of that main memory that already is in cache. So those were the reasons that the district court gave, and we believe that all of them when examined closely and importantly from the standpoint of a person of ordinary skill in the art lead to two conclusions. One is that this invention used a conventional snoop signal that only knows whether the data request is within a cacheable range, and secondly, that as a result of issuing the snoop signal, the processor does what processors always do, and that is look a snoop just as the name snoop implies, and if they find data at that location, and if the data is dirty, then they update the cache with main memory. Can you tell us where in the specification the word cacheable appears? The word cacheable does not appear in the specification, but again, that's not the issue. Or in the claims. Or in the claims. What both the claims and the specification talk about is a signal that references a cached data storage location, and we've explained why referencing a cached data storage location is a reference to a place and not a reference to specific data that is somehow known to be in cache. How about the statement in the claim, when to write cached data to the address? That doesn't sound like a location. It sounds like data. That language deals with what the snoop signal communicates to the processor, and it's undisputed that conventional snoop signals at the time communicated to the processor in a way that when the processor received the snoop signal, that the processor would then look in the cache memory, see if the data was there at the requested address, and then only update if the data was dirty. What the district court did was read that statement as basically right. It effectively turned a snoop signal, a signal that says snoop, into a signal that directs the writing, whether the data is clean or dirty. There is no system that worked that way at the time, and there's no system even today that works at the time. It would have been completely illogical for the inventors to say, write back no matter what, whether the data is clean or dirty, as opposed to just write back the dirty data. Mr. Hadley, in column two, lines 26 through 30, there's a reference to the snoop signal and the retry function that is triggered by the snoop signal. And you have the snoop signal, it triggers the retry, which permits the cache, which signals the computer to move the cache memory into the memory. But the only way that could happen is if the snoop signal knew in advance that the cache contained the data. No, Your Honor. Doesn't this completely confirm what the district court said? No, Your Honor. The way that snooping worked conventionally at the time, and the way that the inventors used the term snoop signal here, is that when the snoop signal is received by a processor that has cache memory, the first thing that that processor does is it looks in its cache to see if the data is there or not, because it doesn't know from the snoop signal. If it finds that data is there, then it asserts the retry signal. And what the retry signal does is that it places a hold on the transaction. It tells the processor that issued the snoop signal to wait, and what that does is it allows the computer time to then go and look. But what this passage says, it says the snoop signal finds a cache, a location, then it triggers the retry signal. But the only reason it would do that is if it knows the data is in there, right? That's what it seems to be indicated by Judge White, and seems pretty consistent with both the language of the claim and, as you point out, the specification itself, particularly in the abstract. What this language says is that it responds to the snoop signal with a retry. It doesn't say that it always responds. And our position is that a person skilled in the art reading this language who is familiar with the way snooping worked would have understood that the retry is asserted if there is data at the location. It's not asserted if there is not data at the location. The language in this summary doesn't say whether you always assert the retry or you don't always assert the retry. Essentially, what the district court did was read this as saying the retry is always asserted. But let me take you to... Is there anything that says otherwise? I believe there is, Your Honor. So you're saying, and this appears... This was a concern of mine too, so if I could just follow up. This appears not just on Column 2, but also, I guess, the same or similar language in Column 12, you know, the passage. In Column 12, the language is actually a little bit different, because in Column 12, what it says is that the bus interface circuit relinquishes control, and that's by asserting the retry of the future bus to permit the computer to write back. I'm thinking of the previous sentence, the one immediately preceding the one that you just read. It has the same language that the processor in the future bus controlling the cache responds to the SNOOP signal with a retry signal, which is the response to. And your suggestion, I take it, is that that means it may respond to, but may not. It may or it may not, or the retry signal may be asserted and it may not be asserted. It doesn't say that it's always asserted. Yes, Your Honor, that's our position. A response to, the most natural implication would seem to be that's what happens when the signal is received, or when the, yeah, when the SNOOP signal is received, that that's what happens. Not to a person. But you're saying, okay, well. What I'm saying is not to a person skilled in the art. A person skilled in the art would understand that what this means is that if the retry signal is asserted, then there will be a response. Or if, let me clarify that. I understand what you're saying. That there may or there may not be a retry. But here's what a person skilled in the art would really have done. A person skilled in the art would have read the entire specification. And we focused on the summary language. We've seen what's in the abstract. And column 12 is sort of, again, a summing up. But in the specification, the paragraphs that really deal with how SNOOPing occurs in this invention begin at column 9 at about line 47. And what that says, the first, it consists of two paragraphs. The first paragraph. This is the May sequence? Well, it's part of it. The first, I mean, these are the two paragraphs that begin on column 9 and go through the first couple of lines in column 10, starting at line 47, that talk about in the preferred embodiment how SNOOPing works. And this is the place where a person skilled in the art would have lived, where they would have gone, to find out how SNOOPing works actually in the preferred embodiment of the invention. And there's no dispute between the parties as to how the first paragraph describes SNOOPing. And what that says is that if a computer on the bus that has the cash. You're starting at line 47, I take it, of 9? Correct. Column 47, where it begins to ensure. Line 9, line 47. Yes. OK. To ensure cash coherency. And the first thing it talks about is what happens in the invention when a computer on the second bus is making the request for data. And that's the bus that has the main memory and other computers with the cash memory. And there's complete agreement between the parties in the district court that what this paragraph says is that it uses conventional SNOOPing. That it sends a signal if there is a request for an address that is anywhere within the range of addresses that can be placed in cash memory. There's nothing in here that suggests that the signal somehow knows or has the intelligence to know that the data is actually in cash memory. And then it says that the processor may respond with a retry. And it also then indicates that the appropriate data is written back. Namely, the dirty data. So if the processor maintaining cash finds dirty data in the processor, it writes that Let me see if I understand the use of the word may here. Because I found this to be somewhat difficult to parse. But in the first sentence, to ensure cash coherency, when computer 4 seeks to read access a main memory 3 address, it may assert a SNOOP signal on future bus 12. In that architecture, it does assert a SNOOP signal, does it not? It may assert a SNOOP signal if the address is within the range of addresses that can be placed in cash memory. If the requested address is outside, if it's in the portion of the addresses that never go into cash, then there's no need to assert a SNOOP signal. The second paragraph then deals with, okay, now what happens And this would be something that would be determined, I take it, by the interface circuits table of addresses? No, this is what Yes, that's absolutely right. If it's on the table, out goes the SNOOP signal. If it's not, no SNOOP signal. Correct. The table keeps track, it's not really a table, it's a word, keeps track of what addresses can be put in cash and what addresses cannot. Now the second paragraph then talks about, okay, now what are we going to do when the but from a computer on the first bus? And it tells you two things. One is, okay, now instead of the computer issuing the SNOOP signal, that SNOOP signal is going to be issued by the interface circuit. The second thing that it tells the The thing I'm having trouble with here is the interface circuit issues the SNOOP signal in the invention. When the computer is issuing the SNOOP signal, that's the prior art, right? Well, not exactly. This is talking about the prior art, isn't it? It is talking about the invention and it's making clear that, in fact, if you look at figure one, your honor, this may be the easiest way to visualize this. What it is saying is that this Can I get just kind of a yes or no on that? This is really addressing the prior art. This is addressing the conventional SNOOP process that is used in the invention when it is a computer on the second bus that's making the request. But the prior art had the computer issuing the SNOOP signal. In your invention, the interface does it, right? In our invention, the interface issues the SNOOP signal when the request for an address comes from computer two in figure one. In our invention, when computer four issues the request for an address, then the SNOOP signal comes from computer four. And the interesting thing here is that in both instances, it's computer six that receives the SNOOP request. If the court's construction is correct and if appellees are correct, what that means is that computer six has to be programmed to respond to a SNOOP signal in two completely different ways. It responds in the conventional way if the request comes from computer four on the one bus. But now all of a sudden, if the request is coming from computer two on the second bus and the SNOOP signal is issued through the interface, now all of a sudden computer six has to do something completely different. Somehow this SNOOP signal, which by the way is still in the patent, the same word, the patent consistently uses the word SNOOP signal to describe SNOOP signal. It doesn't talk about two different SNOOP signals. Bring this to a close here. So what they're saying is that when the request comes from the interface circuit, now all of a sudden this computer somehow knows that the address is in cache and is going to write back whether the data is clean or dirty. It's going to operate completely different than if it receives the request from computer four. So essentially the court and the appellees read in two different SNOOP signals into this enabling disclosure of two different and completely separate SNOOP processes in this patent. Thank you, Mr. Hadley. We consumed your rebuttal time. We'll restore that to you. And if you could give Ms. Fletcher and Ms. Holloway an additional five minutes, that'll keep our time pretty close to even. If you need to use it, you may not need it. Thank you, Your Honor. May it please the court. I'd like to begin. Can you wait just a second until he gets his time right? Plus five. Oh, I see you. I got it figured out now. Please proceed. I'm a little slow today. Thank you, Your Honor. I'd like to begin by going straight to column nine at line four, the paragraph beginning at line 47. And the SNOOP signal that's described in this paragraph is not the SNOOP signal that's in claim one of the patent. The SNOOP signal described in column nine is generated by a computer on the bus. But the claimed SNOOP signal must be generated by the interface circuit itself. And in fact, the paragraph at column nine, line 47. I think we just went over that with Mr. Hadley. I think he's told us the same thing. Great. And it doesn't even describe an interface circuit. What does describe. This is all just a one description of a one bus operation. Correct. That's describing the conventional future bus SNOOP signal operation, not the invention that's claimed. What does define the invention that's claimed in the patent here is the very lengthy claim itself. And there's plenty of intrinsic. Let me before you move on. Let me make sure I understand the significance of the word may. Even in the context of the one bus. It's not even an embodiment, the one bus operation. Is it correct to say that in that paragraph, the may refers to what Mr. Hadley described it as referring to, which is a determination that the SNOOP signal will be issued if the address is a cashable address. I believe the may in that paragraph means that the computer is permitted to issue a SNOOP signal, but not required and it won't automatically, but not required. Another way to look at it is that it says when computer four seeks to read access a main memory three address, it may assert a SNOOP signal. The converse of that is when computer four does not seek to read a main memory access, it may not assert a SNOOP signal. So there's certain conditions when the computer may assert a SNOOP signal and others when it may not. But what would be the condition in which it would not? Other than that it wasn't seeking to read a main memory address. In other words, is there a circumstance in which computer four is seeking to read a main memory three address, but does not assert a SNOOP signal? When computer four is seeking to read from main memory address, main memory three, it depends on whether the computers determine that there is data cached in their cache memories and not just in that situation the computer or processor is making the determination of whether data is cached as opposed to in the invention when the interface circuit itself is making the determination of when data is cached. And that's the difference and what 4C claims to be the novelty of the interface circuit was that it took some of that intelligence about whether data is cached in cache memories that are associated with the different processors and moves that information into the interface circuit. That's the SNOOP data that's held in the RAM 214 of the interface circuit. That information is moved into the interface circuit so that the claimed invention can generate a SNOOP signal that indicates whether or not data is cached. And 4C concedes that the abstract of the patent supports the district court's construction and contends that perhaps the abstract is a mistake. But there's no way that the public would be aware that the inventors viewed the abstract as a mistake. I think the patent needs to be read as a whole and the claims need to be interpreted in light of the entire specification as written, including the abstract. Mr. Hadley is saying if you read the patent as a whole you would recognize yourself that it meant cacheable, not cached. Throughout the claims and the patent, the patent refers to cached data storage locations and cached memory. This starts in the abstract, which describes a SNOOP signal as telling the second bus master to copy data from cached memory into the main memory and describes the SNOOP signal there as indicating which memory addresses contain data cached in the cached memory. Then the claim language also indicates that the data must be held in cached memory. The preamble states that the SNOOP signal must tell one of the second plurality of bus masters when to write cached data. The only way the SNOOP signal can tell a device on the second bus when to write cached data is if that data is already contained in the cached memory. Can Judge White even suggest to us that that isn't enabled? Judge White did express some reservations about enablement, but he didn't actually find that the patent was not enabled. And I don't think this is a case where enablement needs to be reached. The question before the court is claim construction. No, but he's raising it in the sense that, you know, in general you want to construe a claim so that it does something. And he's saying this one might not. Well, he did express some concern about that, but the patent does in fact describe and enable the claimed SNOOP signal where the SNOOP signal indicates whether data is cached in the cached memory. And the description of that comes in the figure showing the interface circuit in figure 5, which illustrates the RAM 214, and then figure 7, which shows how the SNOOP data bit is stored in RAM 214. In 4C's reply brief, they suggested that the SNOOP data bit that's held within the RAM would not be able to indicate whether data is cached for all addresses. But the patent actually explains that there's a SNOOP data bit for each address in memory. And at the bottom of column 8, line 61, the patent states that figure 7 illustrates the data word stored at each location. I'm sorry, what column are you on? Sure, this is at column 8, line 61. The patent states that figure 7 illustrates the data word stored at each location of RAM 214. So there's a SNOOP data bit for each memory location, which will indicate whether that particular memory location has data cached at it. That's the SNOOP data that's described in the invention. That's the SNOOP data that's used to set the SNOOP signal state to indicate whether data is cached or not. How can the RAM 214 hold an entire table keeping track of whether data is in cache or not? It describes the... Replicating the entire cache almost, isn't it? It doesn't have to store the data itself that's maintained in cache. It just stores the address, right? Right, and the SNOOP bit is just a single bit per address that indicates whether or not data is cached. So it will be smaller than the cache memory itself.  Other portions of the specification also are consistent with the claim language and the abstract. For example, at column 2, starting at line 21, the summary of the invention expressly describes the SNOOP signal as indicating whether the future bus address references a cached data storage location. Again, this means that the address on the bus refers to a location in cache memory where data is cached. The second portion of that paragraph is that the summary of the invention also describes what happens if the SNOOP signal does, in fact, indicate the data is cached in cache memory. It states, if the SNOOP signal indicates the future bus address references a cached data storage location, another computer processor on the future bus controlling the cache responds to the SNOOP signal with a retry signal. And what this means is that the processor asserts the retry signal so that it can take control of the bus and write the data from cache memory to main memory. The patent in the description of the preferred embodiment at column 12, starting at line 11, likewise describes the SNOOP signal as indicating whether data is cached in cache memory. The description of the preferred embodiment states that the SNOOP signal indicates whether the future bus address references a cached data storage location. So throughout the patent, in the abstract column 2, column 10, column 12, the patent consistently describes the SNOOP signal as indicating whether data is, in fact, cached in the cache memory. For those reasons, the district court was correct to construe the SNOOP signal as requiring the signal to indicate whether data is cached in cache memory and not merely cacheable. Under that correct construction of SNOOP signal, there's no dispute that at least 63 of 64 Intel's accused chipsets do not infringe. The second limitation, which is related to the SNOOP signal limitation, is the SNOOP signal telling. And the non-infringement ruling from the district court with respect to this limitation applies to all of Intel's accused chipsets. The district court's construction for the SNOOP signal telling limitation, again, comes straight from the claim language, which requires the SNOOP signal to tell, said one of the second plurality of busmasters, when to write cached data to the address appearing on the bus. And the district court correctly construed this limitation as requiring the SNOOP signal to tell a processor when to write cached data. Again, this is the interpretation that's supported throughout the patent. In the abstract, at column 2 and at column 12, at the portions I previously directed the court to. Under the district court's claim construction for the SNOOP signal telling limitation, there's no dispute that none of Intel's accused chipsets infringe. The HREC signal in the accused processors does not tell, I'm sorry, the HREC signal in the accused chipsets does not tell a processor when to write cached data from cache memory to main memory. If there are no further questions for these reasons, Intel requests that the district court affirm the summary judgment of non-infringement. Thank you, Ms. Fletcher. Ms. Holloway. Good morning, Your Honors. May it please the court, if there are no specific questions, I'd like to focus for a moment on the passage at the bottom of column 9, and not the one that Mr. Hadley and Ms. Fletcher addressed, but the following paragraph beginning at line 67. This is a paragraph that 4C relied on at some length in their reply brief in particular, and I think it could use some clarification. This paragraph describes that the VF translation circuit may assert a SNOOP signal when generating any particular future bus address. And 4C says, well, what this tells us is that the SNOOP signal cannot say that data is cached because it's doing this for any particular future bus address. What we have to keep in mind, of course, is that what the invention does is translate a set of addresses. There are a set of VME bus addresses that are translated into future bus addresses, and the claimed interface can provide the translation for those addresses. Now, the devices on the future bus control both the translation information and the SNOOP bit. So what this tells us is that for a given address that's to be translated, the translation circuit may assert a SNOOP signal, that is, if the data is cached, or may not assert the SNOOP signal if the data is not cached. So that's all really that that paragraph means. It doesn't mean that the SNOOP operation is optional with respect to the interface, or that the SNOOP signal is optional with respect to the interface, or certainly that the retry is optional. With respect to the interface. The other point I would like to raise has to do with enablement, just very briefly. In column 10 here at lines 9 through 14, this describes how the devices that are on the future bus are able to adjust the translation information and the SNOOP data so as to dynamically keep track of the information. So what RAM 214 is, is in fact exactly what 4C says is required, a dynamic table that has address translation information, and for each such address, the required SNOOP bit. Can a single bit hold all that information? There's a single bit per address, your honor. That's the significance of, at the bottom of column 8, the statement that figure 7 illustrates the data word stored at each location of RAM 214. There will be multiple locations, one for each address. And similar language appears in column 10 at line 11, each RAM 214 location. So the RAM is not simply a single register. What's shown in figure 7 is one entry for the RAM, a typical location, holding the address bits, the SNOOP bit, and other information. And the SNOOP bit is just going to be an up or down, right? Yes. For example, one would say SNOOP. Yes, exactly. And there was some question as to why the device might do this. Why the device would say, every time data is cached, let us do a write back from the cache into main memory. And the reason for doing that, your honor, is it keeps the interface relatively simple. The interface can keep track of whether data is cached or not, and need not also keep track of whether the data is incoherent. And then the retry signal on the future bus is allowed to perform basically as it always has, except that all the device has to do is write back and skip the cache coherence check. So it makes the device a bit simpler. And that's the reason for doing it this way. If there are no further questions with respect to VIA, I'm ready to stand down. Thank you, Ms. Holloway. Mr. Hadley, you have three minutes remaining. Your honor, the discussion of what takes place on the future bus is relevant to the invention. Because computer six has to receive SNOOP signals in the invention from both computer two and computer four. So to find that the district court was right, that computer has to understand that there are two different SNOOP signals in this invention, a conventional one and a novel one. And a novel SNOOP signal is just not described or disclosed anywhere in this invention. There is no passages that teach how you would provide a SNOOP signal that knows the data is in cache and indiscriminately writes back both clean and dirty data. The appellees have come and suggested that it's this RAM 214, but there is no evidence in the record that shows that RAM 214 would be capable of doing anything other than telling the computer whether an address was subject to being in cache or not subject to being in cache so that it could issue the SNOOP signal or not issue the SNOOP signal. There is no evidence whatsoever in the record that the SNOOPing operates in any other way. And there is evidence in the record from our expert that, in fact, the RAM 214 is not capable of operating in the way appellees suggest. And more importantly, that's what the district court found. It found that under its construction, that there was no enabling disclosure. It didn't rule on enabling because the issue wasn't presented. But twice the district court said, I'm concerned about this construction because it doesn't seem to be enabled. And not only that, there is no disclosure of two separate SNOOP signals in this invention anywhere. That's why we think a person skilled in the art would read SNOOP signal for what it is. It tells to SNOOP. And in fact, if the SNOOP signal was going to do what appellees say it does, it wouldn't be a SNOOP signal at all. It would be a signal that said just right because I know what's there and I don't care if it's clean or dirty. So just right. Well, you know, there's a name for a signal like that in the prior art. It's called a right signal. Why would you assert a SNOOP signal when all you're going to do is say right? For those reasons, we think that the district court erred in construing SNOOP signal. There's only one SNOOP signal described in this patent. It's described consistently throughout. And there is no enabling disclosure of either two SNOOP signals or more importantly, some kind of smart intelligence SNOOP signal that knows that data is in cash. It's not there. And in fact, it wasn't invented for another 10 years. And it wasn't adopted by the defendants or at least Intel until after that. It was invented by Sun Microsystems about 10 years later. And our expert described in detail in a report that the district court found credible that such a signal would require a complex set of tables to track the millions of bits going in and out of cash memory and main memory. And that is something that just can't be done in a RAM that's disclosed in this invention. There's no other questions. Thank you, Mr. Headley. Our final case.